and we'll proceed to hear argument in the next case on calendar for argument this morning which is 24-6915 Beatrice Johnson versus City of Phoenix and the County of Maricopa. And we will hear first from Mr. Abney. Thank you, Your Honor. May it please the court. My name is David Abney. I'm representing the plaintiff appellant. It's a pleasure to see you again, Judge Hurwitz. It's a pleasure on my side, too. I was, over the last couple of weeks I've been rereading the Iliad and the Odyssey. And when I read it in high school it was just an adventure story. But now upon mature reflection I see one of the basic themes is the treatment of the dead. How important it was to the Greeks that the family be notified at once that somebody has died and that the body be turned over immediately for the proper rituals and ceremonies to make sure that the deceased person was received into the afterlife properly. It was an important theme. And when it was violated it was regarded as an extreme outrage, for instance Achilles dragging the body of Hector around Troy in the back behind his chariot. And here we have the rite of sepulchre which is the common law reflection of a tradition that goes back into ancient times that the survivors of a deceit have a right to find out that their loved one has died as quickly as possible and to have the body turned over to them for the proper ceremonies and rituals, whether it's Christian, Buddhist, whatever it may be. Let me assume for purposes of discussion that you have, your client has an Arizona law claim against the city and county, which for sepulchre or for something else. Tell me why there's a constitutional violation here, which is why, which is necessary for a section 1983 case. Well here we have a suspect class and it's not, and I'll return to the homeless people as a suspect class later I hope, but we have a black family, a black person, a sister, and her deceased sister is black and the allegations and the complaint are that they are being treated differently because they are black and being black is a suspect class. I understand that's what the complaint says. Is there a plausible allegation that they're being treated differently because they're black? I just don't see anything in the allegations of the complaint that makes it plausible that they're being treated any differently than, perhaps your homeless class, but they just don't get around, put around how quickly they got to it in this case. The complaint alleges that. I know, but it has to plausibly allege it. In other words, we have to have, we either have to have intentional discrimination or a policy or a custom or practice and I just, the naked allegation that one exists. That is what is alleged. Under Iqbal and Thwambly it doesn't get you there anymore, so you've got to have facts that make it plausible that a policy exists. Where are those facts? There's an article attached, it really doesn't help me with that. And so those facts don't seem to be in the complaint, do they? But it's one thing to say we think they're, it actually says there is this policy and practice and here's an example that's in the complaint. The Hispanic gentleman who died in this crash, his family was immediately notified. But the black family was not. But then that raises the question under Iqbal, did you plead sufficient facts to show that the county knew as soon as the decedent was identified who the next of kin was? Yes. You said on information and belief that they knew immediately, but what are the facts that show that the county knew and how they knew? It's just, it's a conclusory ultimate fact that's being pled and there's no allegations that oh, they knew from X record that it was so and so, as you know, brother, sister, whoever. Well the... There's no facts on that issue, it's just conclusively stated. Excerpt of record 91 paragraph 43 states that both the city and county knew who the associates and family members of Beatrice's sisters were. That's your complaint. Right. Right, but that's the ultimate fact. What facts establish that they knew that? In a different era of notice pleading, perhaps that would have been enough, but after Iqbal and Twombly, we need to have facts, sufficient facts pled to make the conclusion plausible. But it specifically says that they have her records and the records specifically say that they knew who the family members were and they had her fingerprints and all they had to do was run those and notify the family members and... No, no, just stop for a second. Oh darn. Just because I want to be clear about this. I do think the record shows that they'd identified the decedent relatively early on, but how do, how can I, why is it plausible to think that once the decedent was identified, the county knew who her next of kin was? They had her records from her fingerprint cards and her earlier encounters with the law enforcement. Okay, but you didn't allege that the fingerprint cards identified the next of kin, did you? We, that the... And who it was. Yeah, it's, it's, that the records and it's paragraph 43 and other points in the complaint that yes, they did know who her family members were. You allege that, but do the fingerprint cards identify the next of kin? I don't think a fingerprint card does, but they had, the allegation was that they had records where they could have, they knew who the family members were. You allege that, but I'm trying to figure out what, whether that's plausible. But the, the key... Why is it plausible that they had a record who identified the next of kin? Well, that was alleged and you have to accept it as true at this stage of the proceedings. Plus, under, I think it's rule nine or eight, you can allege knowledge generally. And that's what they did. They alleged, you have this knowledge and that allegation sticks under, I believe it's rule nine, that you can allege knowledge generally. Is it your contention that there was some readily available record beyond the fingerprint card which identified next of kin? Yes, they had, they had records on it. Yes, your honor. Well, what record was that? What? Well, it's, she's had encounters with law enforcement and they listed next of kin and the sisters listed as next of kin. They didn't notify any kin, by the way. It was, and they never did. What happened was the family members, after a couple days of no contact, they started calling around to try to find out what had happened and eventually they wound up at the county medical examiner's office and they said, good thing you called us. We're just about ready to send out the body for cremation. So they were able to get the body, they had a funeral, they had all the proper services and by this, by this tiniest margin, they at least had some opportunity, delayed though. And the right of sepulcher is immediate notification and immediate turnover of the remains to the survivors so they can, they can do their proper ceremonies. Let me, let me go back to these records because I've gone through the district court pleadings and the ruling below. Did you argue to Judge Snow that the county had in their hands a specific record that identified the next of kin yet didn't do anything about it? Yes, that was presented to the district court. No, that was the allegation in the complaint was presented. I don't see any reference to a specific record that you contend that the county had from which or the city had from which you could identify the next of kin. Honestly, I can't say. Today you're talking about arrest records. They're not in the record. They're not, there's no allegation about them. But you know, I'm trying to figure out whether that argument was ever made below. Well, I understand you didn't represent it, no, but it was, it was in the complaint itself and the complaint was a subject to the motion dismissed and everything has to be presumed to be true. I think you can take it to the extreme and say, well, not only it has to be plausible, you have to prove it in the complaint. Well, no, you don't. You simply have to make the allegations which are regarded as true. And it's certainly plausible that the law enforcement authorities, well pleaded allegations, you have to plead facts and not conclusions. That's what Iqbal says. And you did it as to identity. You explained the facts as to how they determine identity. They ran her fingerprints. They had the record. So you identified that. You didn't do that for the next of kin. There's no facts. You just said they knew, but well, but there's no facts to establish the plausibility of that inference. But you're allowed to say, you knew I'm, you're allowed to do that under rule nine. You can generally allege knowledge. Iqbal was about the attorney general's intent in adopting a policy. So the whole rule is framed in terms of facts that give rise to a plausible inference of intent. So you can't just say because it's a knowledge issue that Iqbal doesn't apply. It would overrule Iqbal on its own terms. Well, it does. Although the complaint in Iqbal was as sketchy as you can imagine. This was not a sketchy complaint. In fact, I think this was the third shot at making it longer and more detailed. And they put in enough details. But if you say, police officers, you knew the next of kin, that is an adequate allegation under rule nine. Assume that it is for a moment. I want to get to the alleged constitutional violation. Let's assume that you've pled all the stuff that you think you've sufficiently pled all the stuff that you you say you've pleaded. As I understand the record in this case, it was basically nine days between the time the body was found and when the authorities were notified and then the body was returned the next day.  When does it become a constitutional violation? Is it a constitutional violation on day two, day three? I mean, it strikes me that, you know, since I'm not clear what part of the Constitution is being violated here, but let's put that aside for a second. When, in your view, did it become a constitutional violation? Well, you have you have an interplay of state law and state law is not the Constitution. So I'm trying to figure out. And as I said, you may have a terrific state law claim. But what point was the Constitution violated and then tell me what part of the Constitution was. The Equal Protection Clause was violated because the sister was black and she was not given the same kind of notification that would have been given to a non black person, which actually, so I don't think that part is sufficiently pleaded. You seem to be making another constitutional argument, which is that you've got to get the body back quickly or somehow the Constitution is violated. I'm trying to figure out where that comes from in the Constitution. That's more that's be a violation of due process of law. You have a due process right in Arizona, at least, and I think in most jurisdictions, to have timely notification of a death and to have time timely presentation or or turning over of the body to the family members. That is a substantive right in Arizona. So the federal the federal constitutional violation is the failure to follow Arizona law. Yes. And if they had been sufficiently steeped in state constitutional law, it's just a violation of the state constitution, right? A due process as well. So, I mean, the count in the complaint on this issue, count three is a federal claim that's based on the underlying state right of sepulcher. It's not a state common law sepulcher claim directly to add. No, that's that's more that's into the negligence area violation of state law. OK, if I may preserve my time, I'd love to chat with you for hours about this. But can I ask you one quick question? Yes, your honor. Do you have a do your clients have a negligence claim against the city? Yes. There is a common law duty imposed upon the government to provide notification and over a bar. I'm speaking in terms of this, as I understand this horrible event occurred when these two individuals that part were in a valid crosswalk and they were hit and killed by a drunk driver, an intersection that the city had previously designated as high risk or something like that. They were in an intersection area. I'm not sure that they were in the crosswalk itself, but they were in a dangerous area and the city had taken those steps to provide proper lighting, warning, et cetera. It's just my question is, do you have a pending negligence claim, wrongful death claim against the city? Yes, your honor. I think it got tossed out with the bathwater, though, because it was the judge didn't take pending didn't take over your supplemental jurisdiction. But do you have a filed state law claim? No, your honor. Are you beyond the statute? If the if the statute is suspended while we're in federal district court, we're fine. And I think it would be OK. That's all I want. I pray at least at least. Yes. Thank you, your honor. Thank you. Preserve my whatever I present. Thank you, counsel. Thank you. So we'll hear first from Ms. Retz. Is that correct or. Oh, OK. I have it listed the other way. All right. So, Mr. Moore, we'll go first for five minutes. OK. You may proceed. Thank you, your honor, and good morning. My name is Sean Moore. I represent Maricopa County in this matter. I only have five minutes, so I'm going to jump right into it. But I'm not sure how much there is to jump into, because as your honors noted, there are very few actual relevant factual allegations in the complaint in this case. Plaintiff's claim is largely based upon an assertion that they did not receive timely notice of their relative's demise. But the complaint is completely devoid of any allegations related to that. Your honors touched on the fact that there were no allegations that no detailed or factual allegations that the defendants knew of the next of kin information at any point prior to receiving contact from the next of kin. But beyond that, there's no allegation of timing. You have to I mean, their whole argument is that they received late notice. They we waited too long to let them know that their relative died. But there's not a single allegation related to timing in the entire case. They don't allege when we learned the next of kin information. They don't allege when we should have told them the next of kin information. They don't allege anything related to how the delay caused them any harm. And so without any allegations related to timing, let me give you a hypothetical. Sure. Let's assume you, as in this case, find the the body is transmitted to the county medical examiner and you do the fingerprinting and you determine who the person is and then you do nothing. For months or years or decades, is there a constitutional violation under that circumstance? I don't think that there would be a constitutional violation, Your Honor. They may or they may or may not be a violation of the common law. Isn't there some sort of property interest that the family has in the body? Yeah. So the so the family does have a property interest in the body. And what the common law says is that as long as that body receives a proper burial, there is no violation of that interest. Even if you delay it for decades. Presumably, if you could take it out for decades, there would certainly be an argument that there is a property rights violation in there. But I just don't know what the consulate I'm trying to figure out what the dividing line is between the property rights violation and no property rights violation. Is it that because the body was returned, everybody seems to agree within 10 days after it was found there can't be a constitutional violation? Or is there is there some other way I can determine whether there was a constitutional violation? I don't think there would be a constitutional violation in any instance, Your Honor, because they kept it forever. Right. I think there would be a certainly common law property claims. I don't think there's a constitutional issue there. And when Mr. Abney was asked this question, right, what what's a constitutional violation? He said that there is a due process violation there. But the problem is, is that argument is circular because the whole idea of a due process violation is that I have a constitutional right and that right was taken from me because and I wasn't given, you know, a proper process when it was taken from me. But that doesn't establish making right in itself, making a substantive due process argument. He's not making a procedural due process argument. I don't think I don't think he says he was denied a procedure. Sure. Sure. He says that they had a substantive right to return of the body and that you you denied them that right. I agree. But what I'm saying is that the argument is circular because you asked him what constitutional right would be violated. The only thing he said was due process. But in order for there to be also he also said equal protection. And why is it a prima facie case here? You have an incident with two people who were not of the same race and they're not treated the same. I mean, that's standard kind of prima facie case. There may be other elements, but why isn't that enough? So it's not. So if you look at the complaint, there's only one factual allegation that relates to race. Most of the factual allegations relate to homelessness, which is not at issue in this case. There's only one factual allegation that relates to race. And that allegation says basically black people are disproportionately homeless. That has no bearing whatsoever on the notice of deceased relatives or any of my question was the incident involved two different people who were not of the same race. One got immediate notification. One didn't. There may be explanations for that. But normally in discrimination law, that's a prima facie case. Similarly situated, different treatment. Then you go on to explanation and, you know, rebuttal. But why isn't that enough for a prima facie case just on that? Well, because I for one for a couple of reasons, your honor, one, there are a bunch of elements to an equal protection claim that that one single fact doesn't meet, you know, an intent to discriminate what the policy is, all of these other things. But even just taking those two things in isolation, I don't think one singular instance of one person being treated differently than another for potentially factually different reasons. I don't think that creates the the depth of factual allegation necessary to state an equal protection claim. And beyond that, the other person was also a racial minority. So I don't see why that would why that would be the result of any intentional decision to discriminate. It seems to me you're you're more apt argument is that Menel requires a practice or policy. Right. And while this may be enough facially to establish disparage treatment. It may not be enough to establish a practice or policy. Correct. I mean, it does seem to me to show that two people of different races were treated differently. There may be a good explanation for it, but because this is Menel territory, there has to be a sufficient allegation of practice or policy, does it? Yeah, that's that's correct. And I alluded to that when I said there are several other reasons why the claim fails. I was just trying to answer. Yeah, but I'm not sure I find convincing your argument that the other person was Hispanic and therefore therefore it doesn't establish it's no evidence of racial discrimination. Well, I think the argument was more that a single isolated incident does not establish the whole category of how the policies of governmental entity intentionally treat an entire group of people. Do we know factually how it came to pass that officials were able to notify the family of Mr. Gutierrez and not Ms. Chambers? So I mean, just going off of the motion to dismiss that or just going off of the complaint because this is a motion to dismiss, I don't believe that that is in the record such as it exists at the motion to dismiss stage. But I see I'm out of time. We have ten minutes. So my question is, no, we don't know. We don't. Yeah. Thank you. Thank you, counsel. We'll hear now from Ms. Retz. Good morning, your honors. Christina Retz on behalf of the city, please, the court answering the question that was posed. It is not on the record how Mr. Gutierrez was identified. We do know that fact and this requires stepping backwards. And I think this entire case requires stepping backwards to the foundations of how a person is identified when they do not have identification on their person. And the way we identify people is through fingerprints, through DNA or through dental records. In this instance, the specific allegation is that the identification came through fingerprints. So if we are looking at a policy and custom for the city, we need to look to that database. That database is the CJIS database that is set up by the state of Arizona. There is a statute that sets that up and there are specific requirements for what information can be within that database and what information cannot be within that database. And that statute is ARS 41-1750. For Fourth Amendment privacy rights, there can only be criminal justice information within that database. So the decedent was identified because she has a criminal history. That database... Is there anything in this record that lets us know whether her criminal history record identified next of kin? There is nothing in the record. What is the statute? The statute prohibits putting that type of information in. You may not include victim information. You may not include information from folks who were not suspects found guilty of a crime. And the reason is very important. I think my question wasn't precise enough. I assume that the decedent had either been arrested or convicted of a crime, therefore there was criminal history information. Correct. And therefore, I think the statute would allow the retention of information about her, correct? The retention about her only, which is why she was identified.  But does the statute prohibit retention of information about her next of kin? Yes. Tell me where it says that. Not specifically by the words, but by exclusion. You can only have criminal history in there. And the reason is because that is a database that is searched across this country for things like fingerprint clearance, for housing, and so there are very specific requirements about what can go in there to avoid discrimination for folks who do not have a criminal history. So we do not want folks to be discriminated against because of their connection to folks who do have a criminal history. There is no warehousing of that information. It would be a huge Fourth Amendment problem, in my view, to create a class of folks who don't have a criminal history and may be guilty by association. So then that means that if you have a criminal history hit, because you come back to a police report, you would have to go to that police report in order to find if there is anybody listed in that. Can you explain to me, maybe this record doesn't have it in it. I understand the city and the medical examiner may have different roles. The city finds the body, brings it to the medical examiner's office, in the meantime had conducted the fingerprint analysis to identify the victim. What are the city's obligations under state law with respect to the body after delivering to the medical examiner? I would argue that there are no obligations. There is no duty whatsoever. There's also no duty under state law to provide a next-of-kin notification at all. That specific issue was addressed in the Guerra case. The Supreme Court addressed that. That was a misidentification of a next-of-kin notification and a person was identified as deceased when they were not in fact deceased and a lawsuit followed from that. And the court, based upon public policy, found that there was no duty. There was no special relationship and that it fell along the line of cases in Arizona that talks about no specific duty to investigate in any particular manner or specific time either. So there is a line of cases that relate specific to that in Arizona as well. One of the key cases is Hogue v. City of Phoenix related to the baseline killer. Allegations that the victims, that they would not have been victims if certain DNA evidence had been tested in a faster time frame. A little bit analogous here because we're talking about a time frame and the court said there was no obligation to identify or investigate or conduct the investigation within a specific amount of time. So here you have a non-obvious issue of next-of-kin. Generally speaking, when we identify next-of-kin, it is because the person has an address and they live at a place with the next-of-kin. Well, now you're sort of moving outside the boundaries of the complaint. Let's assume for a moment that Mr. Abney's client sufficiently alleged that the city had information about who the next-of-kin was on day two, if you will. Would there be, and you didn't pass it on. I know you don't think that's alleged and you say you didn't do it, but if that had that occurred, would there be a Section 1983 violation? No, Your Honor, and I believe that goes back to the substantive due process right at issue. In the Chaudhry case in the Ninth Circuit that talks about the fact that there was not a due process problem when there was a delay in return of an individual, that there's no specific time frame. The right is to receive the body at some point. At any point? At any point. Decades later? Yes. And that happens. That happens because... But I asked you to assume for a moment that you knew to whom it should go. Those cases don't involve a case in which there's an allegation that they knew to whom it should go, but nonetheless held on to the body. That is fair, and Your Honor, I would also say that this is not... Once the body transfers over, the city doesn't have the rights to the body. The body has gone to the county. When you look at the statutes in terms of who has a duty to bury, none of that falls within the city or the city's responsibility either. There's a fundamental problem here with this allegation of Monell, is that the plaintiff has started with an equal protection claim. They have started with a 14th Amendment claim, but they haven't gotten to the place of seeing that there is a policy and custom of delaying in notification, of not being able to notify folks, which may just happen to be because the individual, for example, lists a shelter as their last place of address, where Mr. Gutierrez lists a residence that he lived at a next of kin with. So there are a lot of practicalities involved in identifying people that are individualized and have no specific tie to a person's race. There may be a disparate effect, but it's not because of any type of intentional discrimination. It's because of the factual circumstances surrounding this person's life and what data is out there about them. How much is out there? How many connections did they have? What addresses did they use? But there's nothing in this complaint at all about any type of policy and custom on the city. And if we are looking at the means within which the city is using to identify folks, those are databases that are not within the city's control either. The city doesn't have the right to set the rules for Arizona's database for CEGIS information. In fact, a lot of that trickles down from the federal regulations, the CFRs, as to what data can specifically be within those databases. The city did not have custody of the body after it was turned over. You have an instance here where a legitimate investigation was still ongoing and triggering again into those cases under state law. So I disagree with Mr. Abney that there is a due process right to an ex-of-kin notification existing under Arizona law. That is not correct based upon the case law. GERA specifically rejected that, did not identify a statutory basis, a constitutional basis, a public policy basis for an ex-of-kin notification. And that's really the crux of this case. There may be other cases where there are rights to a body because of the time, but this case is a very narrow window of time of 11 days. And the fact that the family did actually take control of the body, there was no mutilation of the body, there was no taking of corneas, for example, the Ninth Circuit case Newman that talks about rights to children, talks about a procedure in due process that you would have to give the parents of children if their corneas were removed. We're not even in that sphere. Can I ask a question about Count 4? As I understand it, Count 4, the merits of it were not decided, but it was declined for supplemental jurisdiction as in the colloquy with Judge Hawkins. Is that correct? Yes, that's correct. Declined, and at the time, under Arizona's wrongful death statute, a sibling does not have a right to assert a wrongful death claim. Right, but the district court did not reach anything about the merits. That is correct. It was remanded, not refiled. But the district court's order says that the complaint is dismissed with prejudice and doesn't say anything about remanding that claim or dismissing it without prejudice. We need to order that to be corrected? That may be technically in the end that the judge should have been more clear, but in the body, the judge specifically says that it was, yes. It's clear from the substance, but then you get to the end and it says dismissed with prejudice. And if a claim is being declined because all the federal claims are dismissed, the federal claims are dismissed with prejudice and the state law claim is dismissed without prejudice and then 1367 has a window for refiling it. Technically, Your Honor, I would suppose that would be the case. I don't think that it saves it because it is clear from the face. That may be true. But again, he didn't reach the merits, so we can't and it didn't, you know, resolve it on that basis. Yes, Your Honor. As far as you're concerned, they could now file in state court and pursue count four. And I would have expected they would have done this while this was proceeding. It may be that I tend to think Mr. Abney is right about this, that the statute of limitations We do have other. Is told while the case is up on appeal. And Your Honor, we do have other arguments that we would just preserve the fact that there was not a personal representative. I just said you'd make them, you'd make them if the case gets refiled. Yes. Okay. All right. Thank you, counsel. We'll hear rebuttal. My colleague from the city says that the city has no obligations, no duty whatsoever, but Arizona has adopted the common law as the rule of decision. And the common law provides that there is a right of sepulcher. In Arizona, in addition, as the court knows, liability is the rule and immunity is the exception when you're talking about public entities. So here there is, I think there's a statement that there are no obligations and no duty whatsoever which was specifically made by the city. And I think implicitly made by the county is incorrect. There is a duty and the duty was violated. There is enough here to go forward on the claim of disparate treatment. Within the complaint itself, you have one example of it and then there are allegations of knowledge and disparate treatment. I submit that for all these allegations of the city knew, the county knew that it needs to be treated under Rule 9 as a general, proper allegation and you don't have to get into the specifics of how did you know. You knew and now it's up to you to come into court and say, I didn't know and here's why I didn't know. I could go on at length, but I would invite specific questions and if there are none, I would release us all to lunch. Not all of us. All right. All right. Thank you, counsel. Thank you, Your Honor. The case you argued will be submitted. Thank you.
judges: HAWKINS, HURWITZ, COLLINS